UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
ST. LOUIS DIVISION

| | |
|---|---|
| JAMES DAHER, individually and on behalf of all others similarly situated,<br>　　　　Plaintiffs,<br><br>　　v.<br><br>ASCENT CAPITAL GROUP, INC. and MONITRONICS INTERNATIONAL, INC.,<br>　　　　Defendants. | )<br>)<br>)<br>) Case No. 4:19-cv-1830<br>)<br>)<br>)<br>)<br>) **Jury Demanded**<br>)<br>)<br>) |

## **COMPLAINT – CLASS ACTION**

1. Plaintiff James Daher brings this action against Defendants Ascent Capital Group, Inc. ("Ascent") and Monitronics International, Inc. ("Monitronics"), to secure redress for Defendants' practice of causing nonconsensual calls to be made to the cellular telephone numbers of Plaintiff and others using an automatic telephone dialing system ("ATDS" or "autodialer") and an artificial or prerecorded voice, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

## **INTRODUCTION**

2. Advancements in telephone dialing technology by the 1980s and 90s made reaching a large number of consumers by telephone easier and more cost-effective. However, this technology also brought with it an onslaught of unsolicited

robocalls, spam text messages, and junk faxes that intrude on individual privacy and waste consumer time and money. As a result, the federal government and numerous states have enacted legislation to combat these widespread telemarketing abuses. As Congress recognized:

> Many customers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers…. Banning such automated or prerecorded telephone calls . . . except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

Pub. L. No. 102-243, 105 Stat. 2394 § 2(6, 12) (1991).

3. As is relevant here, federal law under the TCPA prohibits "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service[.]" 47 U.S.C. § 227(b)(1)(A)(iii).

4. The TCPA provides for injunctive relief and the greater of actual damages or $500 per violation, which can be trebled where the statute was "willfully or knowingly" violated. 47 U.S.C. § 227(b)(3).

5. Defendants caused multiple, nonconsensual, automated calls to be made to Plaintiff's cell phone, and Plaintiff thus files this class action complaint on behalf of themselves and others similarly situated, seeking relief from Defendants'

illegal calling practices.

## JURISDICTION AND VENUE

6.     This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. *Mims v. Arrow Financial Services, Inc.*, 132 S. Ct. 740 (2012).

7.     The Court has personal jurisdiction over Defendants and venue is appropriate in this District under 28 U.S.C. § 1391(b) because Defendants do business in this District, because the calls that are the subject of this lawsuit are believed to have been initiated to Plaintiff and other class members in this District, and because a substantial portion of the events giving rise to this cause of action occurred in this District.

## PARTIES

8.     Plaintiff James Daher is a natural person who received the calls at issue while residing in Jefferson County, Missouri.

9.     Defendant Ascent Capital Group, Inc. is a Delaware corporation headquartered at 5251 DTC Parkway, Suite 1000, Greenwood Village, Colorado 80111.

10.    Defendant Monitronics International, Inc. is a Texas corporation headquartered at 1990 Wittington Place, Farmers Branch, Texas 75234. Monitronics is an Ascent subsidiary that provides home security products and

services. It maintains a registered agent in this District of CT Corporation System, 120 S. Central Avenue, Clayton, Missouri 63105.

## FACTS

11.    Defendants caused autodialed and prerecorded-voice calls to be made to the cell phones of Plaintiff and other consumers, without the prior express consent of the called party.

12.    Defendants' calls were made using dialing system(s) that are automatic telephone dialing systems under the TCPA.

13.    On information and belief, the equipment used to call Plaintiff and the other members of the class defined below had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers. These calls were made with equipment capable of dialing numerous phone numbers in a short period of time without human intervention, as part of an automated process.

14.    No human being physically dialed each digit of the called phone number to place the calls at issue. Rather, the autodialer accessed a stored dataset of Defendants, sorted through that dataset to determine which data to use to generate a list of numbers to call, generated a brand-new sequence for calling those numbers based upon complex algorithms, and then called the numbers. The dialer randomly and sequentially generated phone numbers for calling from a dataset, and

then automatically called those numbers.

15.     On information and belief, Defendants' calls also used an artificial or prerecorded voice.

16.     Defendants did not have prior express consent of non-customers like Plaintiff to make prerecorded or autodialed calls to their phones.

17.     Indeed, not only did Plaintiff and other non-customers to whom Defendants made or caused to be made autodialed or prerecorded-voice calls never expressly consented to receive such calls, but in some instances Defendants' calls continued to be made after the consumer requested that calling cease or notice that the calls were being made to the wrong person, as in the case of Plaintiff.

18.     On information and belief, many class members were sent more than one call, and Defendants lack an adequate system for preventing autodialed or prerecorded-voice calls to phones for which they do not have consent.

19.     Defendants caused these calls to be made to Plaintiff and the other members of the class defined below intentionally. Defendants have been well aware of the TCPA's prohibitions against use of autodialers and prerecorded-voice technology in calls to consumers, but made the business decision to make these calls, anyway.

20.     In 2017, for example, Monitronics agreed to pay $28 million to settle allegations of widespread TCPA violations, in the case of *In re Monitronics Int'l,*

*Inc. TCPA Litig.*, No. 1:13-md-02493 (N.D. W. Va.). That settlement received final approval on June 12, 2018.

21. For its part, and to the extent that it was not directly involved in the calling, Ascent knowingly accepts the benefits of the illegal calls alleged herein (for example, in the form of increased sales and revenue), but continues to engage Monitronics—its wholly-owned subsidiary over whom it has control and oversight as to calling practices—in spite of such illegality.

22. Ascent has material knowledge that Monitronics' calling practices—and those of the third-party vendors with whom it contracts—involve making automated calls to cell phones without consent. Alternatively, Ascent was willfully ignorant of Monitronics' calling practices—including as evidenced by the copious litigation Monitronics has faced for violations of the TCPA—and ratified those practices with awareness that its knowledge was lacking.

23. Ascent has control over Monitronics' calling practices, including the manner and means by which it generates business or engages in debt collection by means of telephone calling.

24. Despite knowing that Monitronics' calling practices are resulting in TCPA violations such as those alleged herein, Ascent has ratified such calling by accepting the benefits of such calls and continuing to permit such.

25. Indeed, Ascent's own SEC business filings treat Monitronics'

continued TCPA violations as a foregone conclusion:

> MONI [Monitronics] has been named, and may be named in the future, as a defendant in litigation arising from alleged violations of the TCPA…. [N]o assurance can be given that MONI will not be exposed to liability as a result of its or its dealers' direct marketing efforts or debt collections…. [N]o assurance can be given that it will not be exposed to liability as result of its dealers' conduct. If MONI or any such dealers do not comply with applicable laws, MONI may be exposed to increased liability and penalties[.]

Form 10-Q (May 10, 2018), http://ir.ascentcapitalgroupinc.com/node/11171/html.

26.     As a result of its ratification of Monitronics' and its vendors' illegal calling practices, Ascent is vicariously liable for such violations.

27.     Alternatively or additionally, Ascent is directly liable for its own conduct in participating in or facilitating the illegal calling practices at issue.

28.     Plaintiff and the class have been damaged by Defendants' calls. Their privacy was improperly invaded, Defendants' calls temporarily seized and trespassed upon the use of their phones, and they were forced to divert attention away from other activities to address the calls.  Defendants' calls were annoying and a nuisance, and wasted the time of Plaintiff s and the class. *See, e.g., Mims v. Arrow Fin. Servs., Inc.*, 132 S. Ct. 740 (Jan. 18, 2012) (discussing congressional findings of consumer "outrage" as to autodialed and prerecorded calls).

29.     Plaintiff and the class suffered an injury-in-fact in at least one of the manners contemplated by Congress when it passed the TCPA because of Defendants' conduct.

30. Plaintiff and the class' injury-in-fact is fairly traceable to the challenged representations and conduct of Defendants.

31. Plaintiff and the class' injury-in-fact is likely to be redressed by a favorable decision in this Court.

### Facts Relating to Plaintiff Daher

32. Plaintiff Daher has received multiple calls to his cellular telephone number from or on behalf of Defendants.

33. For example, Plaintiff received calls from or on behalf of Defendants to his cellular telephone number from (844) 422-7849 on the following dates, among possible others: June 6, 2019, June 7, 2019, June 10 2019 (5 calls) and June 11, 2019 (3 calls).

34. On information and belief, Defendants caused Plaintiff's cellular telephone number to be called on multiple other instances, as well.

35. Defendants' calls were frequently made to Plaintiff multiple times a day.

36. Plaintiff is not, and has never been, a customer of either Defendant.

37. Rather, Defendants' representatives have indicated during their calls that they are attempting to reach a woman named "Paula" who is Plaintiff's friend.

38. On information and belief, the calls to Plaintiff were made by Monitronics or a vendor with whom it contracts, ratified by Ascent.

39. Plaintiff did not furnish his cell phone number to Defendants.

40. Plaintiff did not authorize the automated placement of calls to his cell phone, and Defendants did not have permission or consent to cause any calls to be made to Plaintiff's cell phone number.

41. Defendants knew they did not have Plaintiff's consent to make some or all of these calls.

42. Indeed, Plaintiff has repeatedly told representatives of Defendants during their calls: (1) that he is not the "Paula" they say they are trying to reach; (2) that they have the wrong number; and (3) to stop calling him. Nonetheless, Defendants have continued to cause autodialed calls to be made to Plaintiff's cell phone number.

43. Plaintiff has even asked to speak with Defendants' agents' supervisors or managers about this unwanted calling, but he has been told each time that they are unavailable.

44. Defendants' calls to the cell phones of Plaintiff and others were made using an automatic telephone dialing system under the TCPA. The equipment had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.  In other words, no human being physically dialed each digit of Plaintiff's and the other class members' telephone numbers to call their phones—the calls were made using equipment with

the capacity to dial a large number of phone numbers in a short period of time, without human intervention. The equipment used to call Plaintiff and the other class members sequentially or randomly accessed their stored telephone numbers, and automatically called them. The autodialers accessed a dataset provided by Defendants or their vendor, sorted through that dataset to determine which data to use to generate a list of numbers to call, generated a brand-new sequence for calling those numbers based upon complex algorithms, and then called the numbers. Defendants' dialers randomly and sequentially generated phone numbers for calling from a dataset, and then automatically called those numbers.

45. Defendants' use of an autodialer is further evidenced by the fact that calls came multiple times per day, and when Plaintiff answered Defendants' calls, he heard a delay before an agent was connected—indicating that it was the *dialer*, not the agent, who placed the call.

46. Additionally, during calls from Defendants, Defendants' representatives have admitted that the calls are automated.

## Class Action Allegations

47. Plaintiff brings this action on behalf of a class consisting of:

All non-customers of Defendants in the United States whose cellular telephone number Defendants or someone on their behalf called using the same or similar dialing system used to called Plaintiff.

48. Defendants caused more than 40 unique cellular telephone numbers to

be called using the same or similar dialing system used to call Plaintiff, where at the time of the call, the person called was a non-customer.

49. Common questions of law or fact exist as to all members of the class, which predominate over any questions solely affecting any individual member, including Plaintiff. Such questions common to the class include but are not limited to:

   a. Whether the calls were made using an "automatic telephone dialing system" as such term is defined or understood under the TCPA and applicable FCC regulations and orders;

   b. Whether the calls were made using an artificial or prerecorded voice as such terms are defined or understood under the TCPA and applicable FCC regulations and orders;

   c. Whether Defendants had prior express consent for calls to the cell phone numbers of Plaintiff and the class; and

   d. Damages, including whether the violations were performed willfully or knowingly, thus triggering treble damages under 47 U.S.C. § 227(b)(3).

50. Plaintiff's claims are typical of the claims of the other members of the class. The factual and legal bases of Defendants' liability to Plaintiff and the other members of the class are the same: Defendants violated the TCPA by causing automated calls to be made to the cellular telephone number of each member of the class, without permission.

51. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has no interests that might conflict with the interests of the class. Plaintiff

is interested in pursuing their claims vigorously, and has retained counsel competent and experienced in class and complex litigation, including with regards to the claims alleged herein.

52. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual action would entail. There are, on information and belief, thousands of class members, such that joinder of all members is impracticable.

53. No difficulties are likely to be encountered in the management of this action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

54. Defendants have acted and failed to act on grounds generally applicable to Plaintiff and the other members of the class, thereby making relief appropriate with respect to the class as a whole. Prosecution of separate actions by individual members of the class, should they even realize that their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct.

55. The identity of the class is, on information and belief, readily identifiable from Defendants' or their vendors' records.

## COUNT I

### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii)

56. Plaintiff re-alleges and incorporates all allegations herein.

57. It is a violation of the TCPA to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service [.]" 47 U.S.C. § 227(b)(1)(A)(iii).

58. Defendants initiated or caused to be initiated calls to the cellular telephone numbers of Plaintiff and the other members of the class defined above using an automatic telephone dialing system or an artificial or prerecorded voice.

59. These calls were made without regard to whether or not Defendants had previously obtained express permission or consent from Plaintiff or the other members of the class for such calls. In fact, Defendants did not have prior express consent to call the cell phone numbers of Plaintiff and the other members of the class when the calls were made.

60. These violations were negligent. Alternatively, they were willful or knowing.

61. Defendants violated the TCPA by making non-emergency calls to the cell phones of Plaintiff and others using an automatic telephone dialing system or an artificial or prerecorded voice, without prior express consent.

62. Upon information and belief, some of the calls to Plaintiff and the class were made by (sub)vendors of Defendants. Defendants are liable for those calls, too. *See, e.g., In re Rules & Regs. Implementing the TCPA*, 23 FCC Rcd. 559 ¶ 10 (2008) ("[A] creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the [FCC's TCPA] rules. Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call.").

63. As a result of Defendant's conduct and pursuant to Section 227(b)(3) of the TCPA, Plaintiff and other members of the class were harmed and are each entitled to a minimum of $500 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls.  47 U.S.C. § 227(b)(3).

WHEREFORE, Plaintiff James Daher, individually and on behalf of the class, respectfully requests that the Court enter judgment against Defendants for:

A. Certification of the class as alleged herein;

B. A declaration that Defendants violated the TCPA as to Plaintiff and the class;

C. Injunctive relief aimed at ensuring the prevention of Defendants from

        violating the TCPA in the future;

D.     Damages pursuant to 47 U.S.C. § 227(b)(3);

E.     Costs, expenses, and attorneys' fees, to the extent permitted by law; and

F.     Such other or further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims so triable.

Dated: June 25, 2019               Respectfully submitted,

JAMES DAHER,
individually and on behalf of all others similarly situated,

By:  /s/ _____

Robert T. Healey
(pending *pro hac vice* admission)
HEALEY LAW, LLC
640 Cepi Dr., Suite A
Chesterfield, MO 63005
Telephone: (314) 401-3261
bob@healeylawllc.com


Alexander H. Burke
(pending *pro hac vice* admission)
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020

Chicago, IL 60601
Telephone: (312) 729-5288
aburke@burkelawllc.com

*Counsel for Plaintiff*